FILED

2008 Nov-06  AM 11:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

SAN FRANCISCO RESIDENCE
CLUB, INC., et al.,

      PLAINTIFFS,

v.                                                    CASE NO. CV-08-J-1573-NE

7027 OLD MADISON PIKE, LLC, et al.,

      DEFENDANTS.

### MEMORANDUM OPINION

Pending before the court is defendant Scott McDermott's notice of demand for arbitration and motion to dismiss or, in the alternative, stay action and compel arbitration (doc. 19), defendant McDermott's supplemental motion to dismiss, or in the alternative, to stay action and compel arbitration (doc. 21), defendant 7027 Old Madison Pike, LLC's motion to dismiss or, in the alternative, to stay action and compel arbitration (doc. 26), and the plaintiffs' response in opposition to defendants' motions (doc. 32).  Having considered the foregoing, the court finds as follows:

The plaintiffs are two Alabama limited liability corporations whose members are all residents of California, and San Francisco Residents Club, Inc., which is a California Corporation.  The plaintiffs, along with defendant 7027 Old Madison Pike, LLC ("OMP"), and two others, own a commercial real estate building as tenants in

common.  *See* Exhibit A to Tenants in Common Agreement ("Tenants' Agreement")

submitted as exhibit 2 to defendant McDermott's motion to dismiss (doc. 19).

Defendant McDermott and non-parties Roy Claytor and Bill Chapman are members

of defendant OMP. Defendant Highlands Management Company, LLC

("Highlands"), has the same members as OMP.

Pursuant to the Tenants' Agreement, defendant McDermott was named as

manager of the property.  Tenants' Agreement, ¶ 6.  According to the plaintiffs'

amended complaint, defendant McDermott utilized the services of defendant

Highlands in performance of the managerial duties he had for defendant OMP.

Amended Complaint, ¶ 14.

The Tenants' Agreement provides that:

> A majority in interest of the tenants in common shall have the right to
> terminate the management by Scott McDermott upon sixty (60) days
> written notice with good cause and upon such termination, Scott
> McDermott shall co-operate in the turnover of all books and records and
> shall take no further action during such sixty (60) day period to affect
> the property other than the ordinary day to day management.

Defendant McDermott conceded that the plaintiffs purported to terminate him

in accordance with this provision on August 1, 2008.  Defendant McDermott's

supplemental motion (doc. 21), ¶ 2.  According to the plaintiffs, this termination

became effective September 29, 2008.  Amended complaint, ¶ 14.  In spite of such

termination, defendant McDermott has refused to turn over the books and records of

the tenancy-in-common. *Id.*, ¶ 15. Additionally, he and Highlands Management have continued to represent themselves as the current property managers to the property's tenants and requested the tenants sent all future rental payments to McDermott directly. Plaintiffs' opposition, at 4. The plaintiffs therefore seek a permanent injunction against defendants OMP, McDermott, and Highlands Management (Count II). The plaintiffs further seek, through a request for declaratory judgment, a declaration as to the ownership percentages and rights of the tenants in common (Count I).

The Tenants' Agreement contains the following provision:

> 13.2 <u>Binding Arbitration</u>.  Any controversy arising out of or related to this Agreement or the breach thereof or an investment in the interests shall be settled by binding arbitration, in Huntsville, Alabama, in accordance with the rules of The American Arbitration Association....

Defendant McDermott asserts that the claims of the plaintiffs must be resolved by arbitration, in accordance with the above paragraph. Defendant OMP joined in defendant McDermott's motion (doc. 26).[1] The plaintiffs respond that McDermott is not a party to the Tenants' Agreement and that their claims against McDermott and Highlands Management do not arise from that agreement. Plaintiffs' response, at 6-7.

---

[1] Although plaintiffs assert that defendant Highlands Management Company has not joined in the motions to dismiss or stay, this defendant, added by the Amended and Restated Complaint (doc. 18), remains unserved.

In considering a motion to compel arbitration, the court first must determine whether the parties agreed to arbitrate the dispute. *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir.2004), citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985). Questions regarding the arbitrability of an issue must be viewed in light of the strong federal policy favoring arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). The Eleventh Circuit Court of Appeals has noted that the court's role is to "rigorously enforce agreements to arbitrate." *Klay*, 389 F.3d at 1200 (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985)).

However, because arbitration is a matter of contract, the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate. *Klay*, 389 F.3d at 1200, citing *Mastrobuono v. Shearson Lehman Hutton*, *Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 1216, 131 L.Ed.2d 76 (1995). There is no federal policy favoring arbitration of disputes that the parties have unambiguously excluded from their arbitration agreements. *World Rentals and Sales, LLC v. Volvo Const. Equipment Rents, Inc.*, 517 F.3d 1240, 1247 (11th Cir.2008) citing *Volt Info. Scis.,*

4

*Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S.Ct. 1248 (1989).

The plaintiffs assert that they did not contract with McDermott or Highland to arbitrate their claims against these defendants.  However, the language of the relevant arbitration clause is quite broad, stating "[a]ny controversy arising out of or related to this Agreement or the breach thereof .... shall be settled by binding arbitration...." Tenants' Agreement, ¶ 13.2.  The Tenants' Agreement is the document which both creates McDermott's role as manager of the property and further provides the means to terminate that role as manager.  In his supplemental motion to dismiss or compel, McDermott argues that he has challenged whether the plaintiffs' termination of his is authorized based on the "good cause" for termination required by the Tenants' Agreement.  *See* defendant McDermotts' supplemental motion (doc. 21), ¶ 2.

The plaintiffs allege that their claims do not arise from or rely on the Tenant's Agreement, but rather from common law breaches of duty and tortious acts committed by McDermott and Highlands in their post termination refusal to turn over the books and records of the tenants-in-common.  Plaintiffs' opposition, at 8. However, the basis for the duty to relinquish the books and records of the tenants-in-common comes directly from the Tenants' Agreement.  In fact, the means for termination of McDermott's role as manager is specifically set forth in the Tenants'

5

Agreement.  See Tenants' Agreement, ¶ 6.  McDermott's responds that he has no duty under the Tenants' Agreement to relinquish control of the books and records, because plaintiffs failed to provide the "good cause" required for termination by the Agreement.

"Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes."  *Becker v. Davis,* 491 F.3d 1292, 1299 (11th Cir.2007), citing *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir.2005).  *Blinco* establishes that if a party relies on the terms of a written agreement in asserting the party's claims, that party is equitably estopped from then seeking to avoid an arbitration clause within the agreement. *Becker*, 491 F.3d at 1300.  *See also South Alabama Pigs, LLC v. Farmer Feeders, Inc.*, 305 F.Supp.2d 1252, 1264 (M.D.Ala.2004); citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993) (stating that when a plaintiff "relies on the terms of the agreement in its claims against another party, it is estopped from repudiating the arbitration clause of the agreement").

McDermott's alleged "common law breaches of duty and tortious acts" can only arise from the Tenants' Agreement.  There is no other source for his duty to the

plaintiffs nor the plaintiffs' rights of action for perceived breaches of those duties.[2]
The "'application of equitable estoppel is warranted ... when the signatory [to the contract containing the arbitration clause] raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.'" *MS Dealer Serv.Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir.1999)(alterations and omissions in original).

In the case before this court, the plaintiffs allege that both a signatory (OMP) and nonsignatories (McDermott and Highlands) to the agreements have violated the Tenants' Agreement, by failing to turn over the books and records, and are interfering with the plaintiffs' tenants by post-termination communications with those tenants. Additionally, the plaintiffs' seek to have the defendants account for purported changes in ownership interests, as they allege such ownership is not in accordance with the respective capital contributions.  *See* Amended Complaint, ¶¶ 12, 27, plaintiffs' opposition at 8. *See also* Exhibit A to Tenants' Agreement (titled "Tenants in Common, Percentage Interests and Capital Investment).  Therefore, the plaintiffs' assertions regarding respective ownership rights and allocation of property-related

---

[2]Although the plaintiffs assert their rights to this relief are "independent of the terms of the Tenants-In-Common Agreement" so as to avoid the equitable estoppel exception, the plaintiffs fail to allege the existence of any other source for creation of the parties' duties to each other or any other basis pursuant to which they may terminate McDermott as manager of OMP with "sixty (60) days written notice with good cause ..."

funds, as well as their termination of McDermott as manager and the alleged failures by him to turn over the books and records of the tenants-in-common are "are intimately founded in and intertwined with obligations imposed" by the Tenants' Agreement. *See Becker*, 491 F.3d at 1304.

In *McBro Planning and Development Co. v. Triangle Elec. Const. Co., Inc.*, the Eleventh Circuit considered "the arbitrability of [plaintiff's] claims, cast in tort, against [defendant], with whom [plaintiff] had no written arbitration agreement." *McBro Planning and Development Co. v. Triangle Elec. Const. Co., Inc.*, 741 F.2d 342 (11th Cir.1984).   The Eleventh Circuit ruled:

> Triangle's concern about being forced to arbitrate absent a written agreement, and its concomitant concern about loss of a jury trial in state court, are well taken. However, the close relationship of the three entities here involved ....and the close relationship of the alleged wrongs to McBro's contractual duties to perform ....give one pause. This is not a simple tort case where, for example, Mr. McBro might have committed a battery against Mr. Triangle and there could be no question of the inappropriateness of arbitration arising from a clause in unrelated construction contracts. Moreover, it is well established that a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract.
>
> As regards the lack of a written agreement between Triangle and McBro, at least one other circuit court, in nearly identical circumstances, has held this not to be an impediment to arbitration. That court theorized that the contractor was equitably estopped from asserting this argument, because the very basis of the contractor' claim against the construction manager was that the manager breached the duties and responsibilities assigned it by the owner-contractor agreement. This theory applies

8

precisely here.... As the Seventh Circuit stated in this situation, the contractor's claims are "intimately founded in and intertwined with the underlying contract obligations."

*McBro Planning and Development Co.*, 741 F.2d at 343-344, citing *Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836 (7ᵗʰ Cir.1981) (other citations and footnotes omitted).  See also *Capital Chevrolet & Imports, Inc. v. Payne*, 876 So.2d 1106, 1109 (Ala.2003) (requiring arbitration when there is a "legal and logical nexus between the source of dispute and the arbitration provision at issue").

The court is of the opinion that the reasoning of *McBro Planning and Development Co.* applies with equal force here.  McDermott was named as manager by the Tenants' Agreement.  The authority to terminate McDermott as manager is set forth in the Tenants' Agreement.  The duties of McDermott after notification of termination are found in the Tenants' Agreement.  The respective ownership shares of each of the tenants is contained within the Tenants' Agreement.  The mere naming of their claims against the defendants as torts rather than breaches of the Tenants' Agreement is insufficient to avoid the broad arbitration agreement contained in that Agreement.

The lack of McDermott's signature on the Tenants' Agreement in his individual capacity is not a bar to compelling arbitration under the facts of this case.

*See MS Dealer*, 177 F.3d at 947 (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir.1993) (stating "there are certain limited exceptions, such as equitable estoppel, that allow nonsignatories to a contract to compel arbitration").  The court is further of the opinion that, although the Plaintiffs have to obtain service on defendant Highlands, there is no basis for plaintiffs' claims against Highlands outside of the identical conduct alleged by McDermott.  Unlike plaintiffs' claims against OMP, which is a signatory to the Tenants' Agreement, and McDermott, who asserts he is acting within the bounds of the Tenants' Agreement, plaintiffs' claims against Highlands are solely derivative of their claims against McDermott.  Plaintiffs allege in their amended complaint only that "Defendant McDermott utilized the services of Defendant Highlands Management," and not that defendant Highlands engaged in any wrongdoing in its own right.  See amended complaint, ¶ 14.  There is no allegation that Highlands acted independently of McDermott at any time.  In any event, defendant Highlands did join McDermott as a named claimant in the arbitration proceeding, thereby consenting to arbitration.

Having considered the foregoing, and being of the opinion that the plaintiffs' claims against the defendants are due to be heard in arbitration, the court shall enter an appropriate Order.

The court next turns to defendant McDermott's assertion that because these claims are properly heard by an arbitrator, the court should enter an order requiring the Clerk of Court to return check No. 1328, received from OMP, in accordance with this court's prior Order of September 11, 2008.   Defendant McDermott's supplemental motion (doc. 21) at ¶¶ 7-9.  Defendant McDermott relies on a particular sentence from the court's Order of September 11, 2008, for his argument that the sum of $150,000.00 should be returned to "McDermott, for restoration in the form drawn from the account of 7027 Old Madison Pike, LLC, without it being deposited to the account of the Clerk, U.S. District Court."  The relevant sentence is "[t]he obligations to place the funds received from GSA into the court shall only exist as long as the case remains pending."   This language was included in the court's Order of September 11, 2008, at the request of the defendants.  The court is of the opinion that as the sum in question was paid into the court registry on October 14, 2008, and this case was certainly pending on that date, defendant OMP had the obligation on that date to pay the money in question into the court.  The court finds no basis to now return some of the funds paid into the court by defendant OMP.[3]  The court shall specifically retain jurisdiction for the purpose of disbursal of funds in accordance

---

[3]This is especially true given that it is defendant McDermott who is seeking the return of the funds, rather than defendant OMP, who actually paid the money in question into court.

with any arbitration order, pending the conclusion of said arbitration, by appropriate order.

Having considered the foregoing, and being of the opinion that the defendants' motions to dismiss or, in the alternative, stay action and compel arbitration are due to be granted in part;

Defendant McDermott's motion to dismiss or, in the alternative, stay action and compel arbitration (doc. 19), defendant McDermott's supplemental motion (doc. 21) and OMP's motion to dismiss or, in the alternative, to stay action and compel arbitration (doc. 26) are **GRANTED** to the extent that the court shall **ORDER** that the plaintiffs' claims against defendants McDermott and OMP are referred to arbitration.  The court shall administratively close this case, subject to reopening should any issues remain in the case upon conclusion of said arbitration.  The court shall specifically retain jurisdiction for the purpose of disbursal of funds now in the court registry in accordance with any arbitration order, pending the conclusion of said arbitration.

**DONE** and **ORDERED** this the 6th day of November, 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

12